No. 83-452

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

MITZI SCOFIELD, as Personal Representative
of the Estate of DANIEL C. SANDERS, Deceased,

Plaintiff and Respondent,

-vs-

ESTATE OF JAMES J. WOOD,

Defendant and Appellant.

---

ESTATE OF JAMES J. WOOD, GLEN P. WOOD,
and ROSALYN JUNE WOOD,

Counterclaimants, Cross-Plaintiffs
and Appellants,

-vs-

MITZI SCOFIELD, as Personal Representative
of the Estate of DANIEL C. SANDERS, Deceased,

Counterdefendant, Cross-Defendant
and Respondent.

---

APPEAL FROM:   District Court of the Fifth Judicial District,
               In and for the County of Beaverhead,
               The Honorable Leroy McKinnon, Judge presiding.

COUNSEL OF RECORD:

    For Appellants:

        Landoe, Brown, Planalp, Kommers & Lineberger;
        Gene I. Brown, Bozeman, Montana

    For Respondents:

        Christine C. Parker for Scofield, Dillon, Montana
        Thomas R. Scott, Dillon, Montana
        C. Richard Anderson, Butte, Montana

---

Submitted on Briefs:   April 5, 1984

Decided:   June 27, 1984

Filed: JUN 27 1984

Ethel M. Harrison
_____
                Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

The James J. Wood estate appeals a judgment awarded against it in the sum of $24,000 based on a jury verdict finding decedent 80 percent negligent and plaintiff Daniel J. Sanders 20 percent negligent in an action for wrongful death in the Beaverhead County District Court.

Decedent Wood was proceeding north on Highway 41 in Beaverhead County and decedent Sanders proceeding south on the same highway when the two vehicles collided about eight miles north of Dillon, Montana. The drivers of both vehicles had been drinking beer the evening immediately prior to the early morning accident. The vehicles collided in decedent Sanders' lane of travel, and both drivers were killed. A passenger in Sanders' vehicle recovered from the accident but was unable to recall any details of the accident. Blood samples taken from Sanders and Wood, following their demise, indicated blood alcohol levels of .22 percent by volume for Sanders and .04 percent blood alcohol level by volume for Wood.

The personal representative of Sanders' estate brought an action for wrongful death against Wood's estate. Wood's estate and his parents counterclaimed and filed a cross-claim against Sanders' personal representative in what they labeled a survival action.

A jury trial was held June 1-3, 1983. The investigating highway patrolman testified that the accident occurred because the Wood vehicle was over the centerline and in Sanders' lane of travel. During the settlement of jury instructions, prior to the conclusion of testimony, the court indicated that an instruction on blood alcohol levels was

necessary. However, the court did not give the instruction as indicated. The jury rendered a verdict in favor of Sanders' estate and awarded damages in the amount of $24,000. Wood's estate appeals the judgment and a subsequent survival action filed by Sanders' representative.

The following issues are presented in this appeal:

1. Was the highway patrolman's testimony concerning the cause of the accident properly admitted in evidence?

2. Was it reversible error for the trial court to fail to give a jury instruction regarding blood alcohol levels after it had indicated it would?

3. Is a survival action a compulsory counterclaim to a counterclaim asserting such a survival action, or may it be brought independently in a subsequent lawsuit?

Appellant objects to the following testimony by the highway patrolman:

> "Q. Frank, during your investigation, did any person inform you that the Sanders vehicle had been swerving prior to the accident? A. No.
>
> "Q. Was there any evidence that the Sanders vehicle was not in control at the time of the accident? A. No.
>
> "Q. From your investigation, you made a determination as to which vehicle caused the accident. A. Yes.
>
> "Q. And what is that determination? A. I would say that the Wood vehicle was over the centerline in the Sanders lane of traffic."

This evidence was admitted following an in-chambers discussion between counsel and the presiding judge. Counsel for Sanders argued that there is controlling Montana case law permitting such testimony. We agree.

The highway patrolman was the investigating officer and arrived on the scene shortly after the accident. By his own

3

testimony, he had experience investigating hundreds of multiple-vehicle accidents. His qualifications as an expert witness were not challenged at trial. He testified that he measured scuff and skid marks, noted the resting positions of the vehicles, examined damage to the vehicles, mapped gouge marks in the pavement and noted the accident site's relation to nearby features of the highway as a part of his investigation. From the information gathered at the accident site and twenty-nine years of experience as a highway patrolman, he concluded the point of impact was across the centerline in Sanders' lane of travel.

In Rude v. Neal (1974), 165 Mont. 520, 530 P.2d 428, this Court held that as long as an officer is properly qualified as an expert and is in possession of sufficient facts to warrant the conclusions stated, expert opinion evidence is admissible in explaining the cause of the accident.

Additionally, Rule 704, Mont.R.Evid., provides:

> "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

Also see, Pachek v. Norton Concrete Co. (1972), 160 Mont. 16, 499 P.2d 766 (where ultimate question of negligence of driver or proximate cause of injuries not addressed by testimony, opinion of patrolman as to cause of accident admissible); State v. Stoddard (1966), 147 Mont. 402, 412 P.2d 827 (patrolman with ten years of experience assigned to accident investigation allowed to state his opinion as to the point of impact).

Appellant also objects to the patrolman's testimony on the ground that his statements concerning absence of evidence of prior weaving of the Sanders' vehicle were speculative and

4

exceeded permissible expert opinion. This objection is without merit.

Appellant failed to object at the time of trial to the opinions. Rule 103(a)(1), Mont.R.Evid., places a burden upon the party at trial to object and state the specific ground of objection. An objection raised for the first time on appeal is not timely. Berdine v. Sanders County (1974), 164 Mont. 206, 520 P.2d 650. Unless a timely objection to evidence or testimony is raised at the trial level, it cannot be considered on appeal. Sikorski v. Olin (1977), 174 Mont. 107, 568 P.2d 571; In re Stevenson (1975), 167 Mont. 220, 538 P.2d 5; Close v. Ruegsegger's Estate (1963), 143 Mont. 32, 386 P.2d 739. No objection to the testimony of the highway patrolman was made, and none appears in the record. The grounds stated for objection on appeal were not stated at trial, nor for that matter, were any grounds given at all. Appellant failed at trial to preserve this issue for appeal. Counsel must preserve the record to perfect appellate review of an issue. Goggans v. Winkley (1972), 159 Mont. 85, 495 P.2d 594; Clark v. Worrall (1965), 146 Mont. 374, 406 P.2d 822.

Furthermore, the claimed prejudice could have been, and in fact was, alleviated through cross-examination. In the absence of a showing of an abuse of the trial court's discretion, its decision should not be disturbed on appeal. Graham v. Rolandson (1967), 150 Mont. 270, 435 P.2d 263.

The next issue concerns the withdrawn jury instruction on blood alcohol levels. The instruction was offered by defendant Wood's estate. Proposed instruction no. 36 reads as follows:

> "You are instructed that the laws of the State of Montana recognize the following presumptions:

"(a) If there was at the time 0.05% or less by weight of alcohol in the person's blood, it shall be presumed that the person was not under the influence of alcohol.

"(b) If there was at the time in excess of 0.05% but less than 0.10% by weight of alcohol in the person's blood, that fact shall not give rise to the presumption that the person was or was not under the influence of alcohol.

"(c) If there was at the time 0.10% or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of alcohol."

The statute provides:

"(3) In any criminal prosecution for a violation of subsection (1) of this section relating to driving a vehicle while under the influence of alcohol, the amount of alcohol in the defendant's blood at the time alleged, as shown by chemical analysis of the defendant's blood, urine, breath, or other bodily substance, shall give rise to the following presumptions:

"(a) If there was at that time 0.05% or less by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was not under the influence of alcohol.

"(b) If there was at that time in excess of 0.05% but less than 0.10% by weight of alcohol in the defendant's blood, that fact shall not give rise to any presumption that the defendant was or was not under the influence of alcohol but such fact may be considered with other competent evidence in determining the guilt or innocence of the defendant.

"(c) If there was at that time 0.10% or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of alcohol." Section 61-8-401(3), MCA (1981).

At the close of the second day of trial and before the defense had completed its testimony, counsel and the court settled the instructions to be given the jury. During this

6

conference counsel for plaintiff objected to the foregoing proposed instruction no. 36 on the ground that the presumptions stated in the proposed instruction are applicable only to criminal trials. After noting that the jury needed some guidance on the effect of blood alcohol levels on performance, the judge stated the instruction was helpful and he knew of none other to give.

The following day the defense called its final witness, Kenneth Anderson, a forensic scientist employed at the Montana State Criminal Investigation Laboratory. Anderson testified on the physiological effects of various levels of blood alcohol.

At the time the jury was instructed, proposed instruction no. 36 was omitted. No objection was raised by defense counsel.

It is obvious that, at the time of this trial, the controlling statute on presumptions arising from blood alcohol levels was applicable only to criminal prosecutions for driving while under the influence of alcohol. The plain language of the statute so provides, and there is nothing for the court to interpret. Mont. Ass'n. of Underwriters v. State, Etc. (1977), 172 Mont. 211, 563 P.2d 577. Since proposed instruction no. 36 did not state the law applicable to the facts of this case, it was an improper instruction. A party cannot claim reversible error from the denial of an improper instruction.

Additionally, Ken Anderson, a forensic scientist, testified extensively on alcohol impairment immediately before the jury retired. The witness disclosed that the test results showed decedent Sanders' blood alcohol level to be .22 percent. Counsel for the defense elicited testimony

7

concerning the impairment of vision and coordination at this level of intoxication.

We find the proposed instruction improper and fail to discern any prejudicial reliance on its offering and the judge's action. Accordingly, there is no error.

Finally, appellant requests this Court to reach the issue of whether a survival action is a compulsory counter-claim to a counterclaim alleging a survival action.

The record indicates the issue was never raised or decided by the District Court. Issues not raised at trial need not be considered by this Court. Huggans v. Weer (Mont. 1980), 615 P.2d 922, 37 St.Rep. 1512.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

Mr. Justice Frank B. Morrison, Jr. specially concurs as follows:

I concur in the result but dissent from the majority's treatment of the first issue.

The majority correctly notes that Montana has a liberal rule permitting nearly every form of opinion testimony offered by an investigating officer. In this case the Highway Patrolman, pursuant to that rule, was permitted to testify about whether a certain driver had lost control at the time of the accident and was permitted to testify about the cause of the accident. The Montana rule as applied makes no sense.

Highway patrolmen and other persons with specialized training in accident investigation, should be able to testify about speed if they are in the possession of certain physical evidence. A highway patrolman should also be permitted to testify about point of impact if sufficient physical evidence is available to provide a foundation for the giving of an expert opinion. No investigating officer should be permitted to draw conclusions about what caused an accident or whether certain drivers were guilty of law violations. An anomaly appears in the Montana law. We do not permit evidence that the officer ticketed a party to the lawsuit. However, we do permit the officer to give the same form of evidence by stating what, in his opinion, caused the accident.

I would change the law prospectively becasue these litigants and the trial judge relied upon our past decisions. However, from this day forward I would hold that investigating officers will not be permitted to testify about the causes of an accident or give opinion testimony about law violations on the part of a motor vehicle operator.

Justice

I concur with Mr. Justice Morrison.

Justice