No. 87-232

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

_____

PATRICIA BROHMAN,

        Plaintiff and Appellant,

  -vs-

STATE OF MONTANA,

        Defendant and Respondent.

_____

APPEAL FROM:  District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Thomas Honzel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        P. Keith Keller; Keller, Reynolds, Drake, Sternhagen
& Johnson, Helena, Montana

    For Respondent:

        John Maynard, Dept. of Administration, Helena, Montana

_____

Submitted on Briefs: Nov. 6, 1987

Decided:  January 19, 1988

Filed: JAN 1 9 1988

*Ethel M. Harrison*
_____
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

This is an appeal of an order of the First Judicial District, Lewis and Clark County, granting the defendant/respondent State of Montana (State) a motion for summary judgment against the plaintiff/appellant, Patricia Brohman (Brohman). The District Court ruled as a matter of law that appellant's negligence exceeded that on the part of the State. It is from this ruling that Brohman appeals.

We affirm.

On January 21, 1984, at about 8:10 p.m., Brohman was driving east from Missoula, Montana to Helena, Montana on Highway 12. She was accompanied by her husband, two daughters and one son. The roads were intermittently snow packed. Approximately two miles west of Elliston, Brohman attempted to pass a slower moving truck driven by Jason Newton. At this point in the highway, a hump in the roadway existed disallowing sight from either the west or east side. As Brohman pulled into the passing lane, another car, driven by Sean Kane who was accompanied by three other Carroll College students, was cresting this hump from the opposite direction. Neither Brohman nor Kane could react and a head-on collision resulted. All parties suffered varying degrees of injury and two of the passengers in Kane's car died.

The hump in the road is not noticeable from a distance. A driver in either direction can see vehicles if they are far enough away but lose sight once the vehicle is closer to the hump. The highway runs parallel to a railroad track that is completely flat. Although the highway is marked with a double stripe indicating a no-passing zone, there were no signs indicating a no-passing zone and on the night of the

accident the stripes were covered with snow and ice. The investigating highway patrolman, Bernard Barton, testified in deposition that he had to dig through the packed snow to find the highway striping.

At the time of the accident, Brohman's visibility was obscured by blowing snow. Barton stated that on his way to the accident scene he passed the ambulance but could do so only because he had radio communication with the ambulance driver.

Brohman could not remember events leading to the accident or the accident itself. She did, however, testify that she had traveled this stretch of highway frequently.

This action is a result of the Brohman-Kane accident. The underlying claims in this case were originally filed in Federal District Court where the estates of the two deceased victims sued Brohman and the Shaklee Corporation (Shaklee) because of diversity of citizenship. Brohman worked for Shaklee, was driving a leased vehicle that she and her husband received through their participation with Shaklee, and was returning from a Shaklee meeting in Missoula when the accident occurred.

Brohman attempted to join the State in the Federal cases as a third-party defendant but the Federal District Court denied the motion on March 7, 1986 on grounds that the presence of the State as a third party defendant would destroy diversity of citizenship. On March 13, 1986, the Federal District Court granted motions for partial summary judgment against Brohman and Shaklee on the issue of liability.

This suit was filed in State District Court on January 29, 1986 alleging the State's negligence caused the accident because of careless and reckless design, construction or supervision. The State moved for partial summary judgment on

grounds that Brohman was collaterally estopped from denying liability because the Federal District Court had ruled she was negligent as a matter of law. The State then moved for partial summary judgment on grounds that Brohman's negligence exceeded any negligence on the part of the State. Both motions were granted and final judgment against Brohman was entered.

On this appeal, Brohman relies on the report of her expert, Donald Reichmuth, an engineer, who concluded that the stretch of highway was dangerous. Reichmuth based this conclusion on a "deficient stopping sight distance for 55 mph and [a] blind spot in the passing sight distances from both east and west." He stated that the posted speed should be 45 or 40 mph and no passing signs should augment the no-passing zone pavement markings.

The only issue we have before us is whether the District Court erred in granting the State's motion for summary judgment.

> Summary judgment may be granted pursuant to Rule 56, M.R.Civ.P., when there is no genuine dispute over material facts and the moving party is entitled to a judgment as a matter of law. The initial burden of proof is upon the party moving for summary judgment. The moving party must demonstrate that no genuine issue of material fact exists. Then, the party opposing the motion must come forward with substantial evidence that raises a genuine issue of material fact.

Hendrickson v. Neiman (1983), 204 Mont. 367, 370, 665 P.2d 219, 221.

Brohman contends the general rule disallows disposal of negligence cases with a summary judgment motion.

> Ordinarily, issues of negligence are not susceptible to summary judgment and are better determined at trial. Brown v.

4

> Merrill Lynch, Pierce, Fenner & Smith, Inc. (1982), Mont., 640 P.2d 453, 458, 39 St.Rep. 305, 310. Liability should not be adjudicated upon a motion for summary judgment where factual issues concerning negligence and causation are presented. Duchesneau v. Silver Bow County (1971), 158 Mont. 369, 492 P.2d 926, 931.

Hendrickson, supra, 665 P.2d at 222.

However, we have in the past affirmed the granting of summary judgment on negligence when it is clear that a party has breached a duty and caused an accident. Birky v. Johnson (Mont. 1986), 716 P.2d 198, 43 St.Rep. 488.

In this case, we are dealing with a suit by Brohman against the State for injuries she suffered. For Brohman to recover, she would have to prove that the negligence on the part of the State exceeded any negligence on her part in causing the collision. Section 27-1-702, MCA. Section 61-8-325(1) and (2)(a), MCA defines the applicable duty for Brohman under the circumstances of this case:

> (1) No vehicle shall be driven to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within 100 feet of any vehicle approaching from the opposite direction.
>
> (2) No vehicle shall at any time be driven to the left side of the roadway under the following conditions:

5

(a) when approaching the crest of a grade or upon a curve in the highway where the driver's view is obstructed within such distance as to create a hazard in the event another vehicle might approach from the opposite direction.
. . .

The State has the duty to provide and maintain safe highways for the citizens of the state of Montana. State v. District Court of the Fourteenth Judicial District (1977), 175 Mont. 63, 67, 572 P.2d 201, 203. Brohman argues that the State failed to properly warn her of the no-passing zone because the double striping was covered with snow and there were no no-passing signs in the area. Brohman contends therefore, that the State breached its obligation under § 61-8-203, MCA:

The department of highways shall place and maintain traffic-control devices, conforming to its manual and specifications, upon all state highways it considers necessary to indicate and to carry out this chapter and chapter 9 or to regulate, warn, or guide traffic.

From its plain language, this statute shows the State of Montana is required to place a sign where "[i]t considers necessary . . . " In the case of no-passing zones, the duty on the part of the State is discretionary.

The department of highways may determine those portions of a highway where overtaking and passing or driving to the left of the roadway would be especially hazardous, and it may by appropriate signs or markings on the roadway indicate the beginning and end of these zones. When the signs or markings are in place and clearly visible to an ordinarily observant person, every driver of a vehicle shall obey the directions of those signs. (Emphasis added.)

6

Section 61-8-326, MCA.

No evidence was presented at the District Court level that any accidents had occurred at this particular spot on Highway 12 prior to the Brohman accident. Patrolman Barton stated he had no knowledge of any subsequent accidents.

The District Court in its memorandum and order granting the motion for summary judgment stated:

> Normally, negligence is a question of fact. In certain cases, however, where reasonable minds cannot differ, the cause of an accident may be a question of law for the Court to determine . . . thus, when reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law.

Citing, Hartley v. State (Wash. 1985), 698 P.2d 77, 81, see also, Prosser and Keeton, The Law of Torts, pp. 238, 319-320 (5th Ed., 1984).

The District Court determined reasonable minds could not differ that Brohman's negligence exceeded that of the State. The District Court concluded, because of the unusual nature of the case, summary judgment was appropriate:

> It is true that because of the peculiarly exclusive nature of the concept of negligence, it is the rare personal injury case which may be properly disposed of by summary judgment. (Citations omitted.) [T]he mistake should not be made of supposing that because summary judgment cannot normally be granted in a particular kind of case, the motion should not be granted in an unusual case of the kind in question where such procedure is in fact appropriate. Citing Bland v. Northfolk and Southern Railroad Company (4th Cir. 1969), 406 F.2d 863, 866.

This case falls into the category that allows the court to determine negligence as a matter of law.

In its memorandum and order of April 15, 1987, the District Court stated:

> [I]t is undisputed that Plaintiff attempted to pass at night, in a no passing zone; that the highway was intermittently snow packed; that visibility was obscured by blowing snow so that she could not see when she was passing; and that she had traveled that highway frequently . . .
>
> Summary judgment demands that all reasonable inferences from the proof presented must be drawn in favor of the non-moving party. Here that means the Court must assume negligence on the part of the State.
>
> I conclude that reasonable minds would not differ on the issue of comparative negligence. The only conclusion to be reached is that the Plaintiff's negligence exceeded that of the State's.
>
> I find therefore, that as a matter of law, the Plaintiff was more responsible for her injuries than the State may have been in designing the highway or in failing to have signs.

Patrolman Barton testified, in his deposition used in the Federal District Court cases in regard to his subsequent accident report, that the hill and improper passing were contributing factors. Additionally, he commented that Brohman's visibility was obscured when she pulled into the passing lane. He stated:

> Q. Describe for us what you mean by improper passing.
>
> A. Okay. If you had been able to see the solid line, the pass was being made where there was a solid line. The visibility was obscured so she could not see when she was passing . . .

8

Q. You said it was snowing when you arrived?

A. Yes. It would snow -- you know, it wasn't a steady snow. It was off and on. Mainly the visibility was bad from blowing snow.

Q. Such as the snow that's kicked up by the car in front of you or a truck?

A. Just the wind blowing snow. It was kind of like a ground blizzard coming through there.

Q. The snow was not falling heavily at that time?

A. No. Before we left it had started snowing quite heavy. But at the time of the accident it was more of a blowing snow type thing . . .

Q. As you were proceeding to the accident scene, say east of Avon and for that area of roadway between Avon and the accident scene, how was your visibility so far as blowing snow as you've earlier described and snowing conditions?

A. The visibility was poor, especially when there was another vehicle in the area. I followed the ambulance for quite a ways just on account of the visibility.

Q. You eventually passed the ambulance, I think you said, and arrived at the accident scene prior to the ambulance arriving?

A. Yes. But they advised me that it was clear ahead to pass. You know, if we wouldn't have had contact, there would have been no way I could pass them, because they were kicking up the snow . . .

Q. Were the conditions similar in the area where you attempted to pass the

9

ambulance as they were at the area of the accident?

A. Yes . . .

Barton also stated at the coroner's inquest that "[t]he pass could not be made in safety . . . on account of the visibility."

From this testimony, the negligence of Brohman is apparent. She drove her vehicle to the left of the centerline in a snowstorm while lacking the ability to see clearly whether there was oncoming traffic. Reasonable people could not disagree that a reasonable person under these circumstance would not, and could not, pass in safety. Brohman could remember nothing of the accident nor events leading to the accident. Therefore, no evidence asserted by Brohman's counsel of her objective knowledge at that time is authentic.

The testimony of Newton and Mike Hataway, the individuals in the vehicle overtaken by Brohman, at the corner's inquest further confirmed that Brohman's vision had to have been obstructed. Newton stated:

Q. What were the weather conditions; do you recall?

A. It was snowing and the visibility wasn't all that good . . .

Q. Was the snow blowing at that time; do you recall?

A. Mm hmm.

Hataway, the passenger in the passed vehicle, concurred.

Q. [D]o you recall what the weather conditions were?

A. It was snowing fairly hard. The road was partially snow packed in places,

patchy, and the visibility was not real
good.

Q. The wind was blowing?

A. Yeah, there was snow blowing around
. . .

On this testimony the Federal District Court based its
conclusion that Brohman's operation of her car caused the
collision and that she violated the Montana Vehicular Safety
statutes. With this information, the District Court
determined that Brohman was, "[a]s a matter of law . . . more
responsible for her injuries than the State may have been in
designing the highway or in failing to have signs."

On this appeal, Brohman argues that the District Court
erred in finding that she was collaterally estopped from
bringing the negligence claim and that a material issue of
fact was raised by the affidavits and reports filed by her
expert.

The District Court's order shows that it independently
considered the facts of the case in its own determination
that reasonable minds would not differ on the issue of
comparative negligence. The District Court assumed
negligence on the part of the State and made all reasonable
inferences in favor of Brohman prior to concluding that
Brohman's negligence exceeded that of the State.

In this case, the District Court properly found Brohman
liable as a matter of law. In any action for negligence, the
plaintiff must produce evidence from which it can be
reasonably inferred that the negligent conduct on the part of
the defendant was the proximate cause of the plaintiff's
injuries. Krone v. McCann (1982), 196 Mont. 260, 638 P.2d
397; Bostwick v. Butte Motor Co. (1965), 145 Mont. 570,
403 P.2d 614. The lack of signing in this case has not

been shown to be the proximate cause of this accident. Even assuming, as the District Court did, that there was negligence on the part of the State, Brohman's act of attempting to pass without a clear view was the proximate cause and far exceeded any negligence on the part of the State.

Brohman would have to prove by a preponderance of the evidence that her damages were proximately caused by the State's presumed negligence. Holenstein v. Andrews (1975), 166 Mont. 60, 530 P.2d 476. Under the facts of this case, the evidence presented and the depositional testimony, it is clear that Brohman could not prove by a preponderance of the evidence that the State proximately caused her injuries. Reasonable minds could not differ in this result.

Finally, as to the claim that Brohman's expert created an issue of fact, viewing the expert's conclusions in a light most favorable to Brohman, a question of fact is still not raised. Reichmuth stated in his report: "[a] driver who does not frequently drive this stretch of road might not perceive the existence of the hump and its accompanying blind spot which limits visibility." (Emphasis added.) Brohman traveled this stretch of road numerous times.

> Q. With what frequency in the five years that you've lived in Helena, now, do you have to go to Missoula? Any idea? . . .
>
> A. Well, it has varied. But it has varied between one and three times a week.
>
> Q. I take it, then, you have driven the road between Missoula and Helena frequently?
>
> A. Yes . . .

From the depositions in this record and the exhibits and documents available, we hold that the District Court did not err in granting summary judgment. The State met its burden of showing no material issue of fact as to Brohman's negligence. Brohman failed to produce substantial evidence that raised a genuine issue of material fact. All-State Leasing Co. v. Top Hat Lounge, Inc. (1982), 198 Mont. 1, 649 P.2d 1250, 1251-1252.

We affirm.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

13